UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ALAN C. AYIN,

                Plaintiff,

      -against-

UNITED STATES OF AMERICA,

                Defendant.
-----------------------------------------------------X

**MEMORANDUM
AND
O R D E R**

02 CV 3190 (CLP)

On May 31, 2002, plaintiff Alan C. Ayin, commenced this action pursuant to the Federal Tort Claims Act ("FTCA"), 38 U.S.C. §§ 1346(b), 2671-2680, seeking damages for injuries he allegedly suffered as a result of a motor vehicle accident that occurred on May 25, 2001. Following the completion of discovery, the parties consented to trial before the undersigned, which was held on April 1, 2004.[1]

Based on the evidence presented at trial, the Court grants judgment in favor of defendant for the reasons set forth below.

## TRIAL TESTIMONY

During the trial, plaintiff presented the testimony of Alan Ayin; the government called Jerome Camarda and Darla Tisdale as witnesses.

---

[1] The parties also agreed to bifurcate the issues of liability and damages.

A. Mr. Ayin

Plaintiff Ayin testified that in the afternoon hours of May 25, 2001, he was on his way to visit his girlfriend in Brooklyn, driving a 1999 Mazda Protege that belonged to his father when he was involved in an accident with a Postal Service vehicle. (Tr. at 2-3, 12).[2] He testified that at the time of the accident, around noon on May 25, 2001, the weather was clear, and the road was dry. (Id. at 20-21). According to Mr. Ayin, he had turned right onto Martense Street from Bedford Avenue and was heading toward Flatbush Avenue when he saw a Postal vehicle which "was just parked" in the active driving lane at the side of the street, directly across from the postal yard which is located on Martense, between Flatbush and Bedford. (Id. at 4-6). He explained that he "figured [the truck] was parked" because he did not see the driver, but subsequently conceded that from his position behind the truck, he could not see if anyone was in the truck. (Id. at 18, 21).

He described the truck as a "medium size" truck, which was stopped two or three car lengths down the street on Martense. (Id. at 13). He testified that he saw no visible signals to indicate what the truck intended to do nor did he notice if the truck's engine was running, but he stated that would not have made a difference to him. (Id. at 4, 13-14).

Mr. Ayin testified that he waited behind the Postal truck to see if there were any cars coming down the other side of the street, and then he proceeded to pull around the Postal truck on the left-hand side into the lane of oncoming traffic. (Id. at 4-5, 20-21). He testified that he proceeded to try to pass the truck because he could see that no one was coming toward him from

---

[2]Citations to "Tr." refer to transcript of the trial proceedings before this Court on April 1, 2004.

the opposite direction. (Id. at 23-24). According to Mr. Ayin, as he was proceeding to drive around the side of the Postal truck, the truck started to make a left-hand turn into the Postal yard driveway and hit the front of Mr. Ayin's car. (Id. at 5-7). Mr. Ayin testified that both vehicles were moving at the time of the collision, although Mr. Ayin testified that he was only going five miles per hour. (Id. at 30).

According to Mr. Ayin, he did not notice whether the gate to the Postal yard was open nor did he see the truck signal its intention to turn. (Id. at 7-8). He also testified that he never saw another Postal Service truck that was coming out of the Postal yard driveway. (Id. at 25). He admitted that he did not even see this other vehicle after the accident. (Id.) He also failed to notice any people at the gate. (Id. at 7-8). He did notice that after the accident, however, other Postal workers came out of the Postal yard. (Id. at 10).

Mr. Ayin testified that both vehicles stopped after the impact and that he got out of his car and called the police on his cell phone. (Id. at 9). He could not recall if the Postal Service driver got out of his truck or if he spoke to anyone at the scene. (Id.) Mr. Ayin did, however, make a report to the police. (Id. at 10).

According to Mr. Ayin, the front passenger side of his vehicle came into contact with the front of the truck's left bumper. (Id. at 29). He described the damage to his vehicle, testifying that "the front passenger side was kind of pushed in on the tires" so that "when you drive you can hear it rub on the tire." (Id. at 11). He was, however, able to drive his car away from the scene of the accident. (Id. at 10-11).

On cross-examination, he denied using his cell phone at the time of the accident, claiming that it was in his pocket. (Id. at 14). He did, however, concede that he was running late and that

3

his girlfriend was expecting him. (Id. at 15-16). Originally, Mr. Ayin denied honking his horn several times before the accident but then later during cross-examination, he admitted that he did honk his horn before the accident, "but it was too late." (Id. at 8, 18, 21-22).

Mr. Ayin also denied telling the Postal Service driver that he did not know that Martense Street was a two-way street, explaining, rather, that he had known for some time that it was a two-way street. (Id. at 20, 27-28). However, prior to the accident, he testified that he did not know that the Postal Service facility was located there. (Id. at 28).

B. Jerome Camarda

Jerome Camarda testified that he has been employed by the Postal Service for 19 years, working in the capacity of "dedicated collector" for about five to six years. (Tr. at 35). His job requires him to collect mail along an assigned route in Flatbush, Crown Heights and Midwood, and then deliver it to the Flatbush Post Office, located at Martense and Flatbush. (Id.) He described the Martense side of the facility as the "back of the post office," with a number of bays that can accommodate five or six trucks. (Id. at 36). Only one truck, however, can go into the driveway at a time. (Id.)

Mr. Camarda described the gate that leads into the Postal Service station as a "rol[l] back electric gate," wide enough to fit one truck at a time. (Id. at 43-44). To open the gate to gain entrance to the facility, there is an electronic pad into which the employee punches a code. (Id. at 44). To leave the facility, the driver simply has to wait and the gate will open automatically. (Id. at 44-45).

On May 25, 2001, Mr. Camarda was driving a two and a half ton step van, similar to a

4

United Parcel Service Truck, on his way to the Flatbush Post Office to deliver mail that was in the back of his truck. (Id. at 37). Mr. Camarda testified that after turning onto Martense Street, he came to the Post Office driveway but he could not turn in because there was a larger truck backing in and another truck attempting to come out. (Id. at 38). Since only one truck can go in or out at one time, he had to wait. (Id.) Thus, he stopped directly across from the driveway, intending to make the left turn. (Id. at 39). Mr. Camarda testified that he had his left turn signal on, waiting to make the turn when he heard a horn honk twice behind him. (Id.) He did not move because the driveway was still occupied by a two ton truck similar to his, being driven by another Postal Service employee, Darla Tisdale. (Id. at 40).[3]

According to Mr. Camarda, after hearing the horn, he observed Ms. Tisdale's truck start to come out of the driveway and "then all of a sudden bam, I heard - - I felt a jolt and the car hit me - - the car that was behind me, hit me in my left side, with his right front." (Id.) Mr. Camarda testified that he did not move his truck at all before the impact. (Id. at 41).[4]

After the impact, Mr. Camarda saw the car up against the truck and the driver got out of the car with a cell phone in his hand, held up to his ear. (Id. at 40-41). The driver of the car told Mr. Camarda that he did not know it was a two-way street. (Id. at 50).[5]

---

[3]Mr. Camarda testified that he has known Ms. Tisdale as a "co-worker" for about four to five years while he was working out of the Flatbush Post Office, but they are not friends, nor are they assigned to the same unit. (Tr. at 54).

[4]According to Mr. Camarda, at the time of impact, Ms. Tisdale's truck was about five feet from the curb. (Tr. at 42-43).

[5]On cross-examination, Mr. Camarda conceded that on the accident report that he prepared, he did not make a notation of plaintiff's statement or the fact that the plaintiff had a cell phone because the form did not ask for that information. (See Tr. at 51-52; Ex. 2).

5

C. Darla Tisdale

Darla Tisdale testified that she has been employed by the Postal Service for ten to eleven years, as a "Chauffeur carrier," responsible for delivering packages. (Tr. at 61, 64). On May 25, 2001, she was driving down the driveway of the Flatbush Post Office onto Martense Street when she saw Mr. Camarda's Postal truck, waiting for Ms. Tisdale to come out of the parking lot so he could drive in. (Id. at 62). According to Ms. Tisdale, Mr. Camarada was "complete[ly]" stopped, with his left turn signal on, indicating his intention to turn into the driveway. (Id.) Ms. Tisdale confirmed that he would not have been able to turn into the driveway while she was coming out. (Id. at 62-63).

When Ms. Tisdale got to the gate, she saw the car behind Mr. Camarda's truck coming alongside his truck, trying to pass Mr. Camarada' truck on the left. (Id. at 63). According to Ms. Tisdale, Mr. Camarda's vehicle did not move at all. (Id. at 63, 67).

DISCUSSION

A. Standards

Under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), tort liability for an accident based on the alleged negligence of an employee of the United States is "to be determined by the application of [] the law of the place where the act or omission occurred" - - in this case, New York. See Smith v. United States, 507 U.S. 197, 202 n.3 (1993) (quoting Richards v. United States, 369 U.S. 1, 9 (1962)); see also Campuzano v. Kim, 751 F. Supp. 36, 38-39 (E.D.N.Y. 1990). Under New York law, the plaintiff must establish three elements in order to prevail on a negligence claim: (1) that defendant owed plaintiff a duty of care; (2) that defendant breached

that duty; and (3) that the breach was the proximate cause of plaintiff's injury. See Fagan v. AmerisourceBergen Corp., 356 F. Supp. 2d 198, 206 (E.D.N.Y. 2004) (citing Johnson v. Bryco Arms, 304 F. Supp. 2d 383, 394 (E.D.N.Y. 2004)).

Under New York's Vehicle and Traffic Law, it is the duty of both drivers "to operate their vehicles with reasonable care taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." Goldstein v. United States, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998) (citing Bradt v. Lancaster, 249 A.D.2d 663, 663-64, 671 N.Y.S.2d 199, 200 (3d Dep't 1998); Terrell v. Kissel, 116 A.D.2d 637, 638-39, 497 N.Y.S.2d 716, 718 (2d Dep't 1986)); see also Guzzardi v. Grotas, 98 A.D.2d 761, 469 N.Y.S.2d 475, 476 (2d Dep't 1983). Both drivers are under a duty: (1) to maintain a reasonably safe rate of speed, (2) to have their automobiles under reasonable control, (3) to keep a proper lookout, under the circumstances then existing, to see and be aware of what was in their view, and (4) to use reasonable care to avoid an accident. See Filippazzo v. Santiago, 277 A.D.2d 419, 419-20, 716 N.Y.S.2d 710 (2d Dep't 2000); Coutrier v. Haraden Motorcar Corp., 237 A.D.2d 774, 776, 655 N.Y.S.2d 660, 663 (3d Dep't 1997); Sarosy v. Scheina, 225 A.D.2d 493, 494, 639 N.Y.S.2d 817 (1st Dep't 1996); see also Barile v. Lazzarini, 222 A.D.2d 635, 637, 635 N.Y.S.2d 694, 696 (2d Dep't 1995); Abramowicz v. Roberto, 220 A.D.2d 374, 375, 631 N.Y.S.2d 442, 443 (2d Dep't 1995).

Under the New York Vehicle and Traffic Law, a person attempting to make a left turn is required to signal his or her intentions through the use of either an automatic or hand signal. N.Y. Veh. & Traf. Law § 1163. By the same token, a person attempting to pass a stopped vehicle on the left side on a two-way street is required to proceed with caution. See N.Y. Veh. & Traf. Law § 1124 ("No vehicle shall be driven to the left side of the center of the roadway in

overtaking and passing another vehicle proceeding in the same direction . . . unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit . . . passing to be completely made without interfering with the operation of any vehicle approaching from the opposite direction or any vehicle overtaken"); see also Browne v. Castillo, 288 A.D.2d 415, 733 N.Y.S.2d 494, 495 (2d Cir. 2001) (holding that "[c]rossing over a double yellow line constitutes negligence as a matter of law") (citing Haughey v. Noone, 262 A.D.2d 284, 691 N.Y.S.2d 553 (2d Dep't 1999); cf. Filippazzo v. Santiago, 277 A.D.2d at 419-20, 716 N.Y.S.2d at 710 (noting that a "rear-end collision with a stopped or stopping vehicle creates a prima facie case of liability with respect to the operator of the rearmost vehicle" and concluding that the defendant's claim that the brake lights and turn signal on plaintiff's vehicle were not functioning was not a sufficient "nonnegligent explanation" in light of defendant's admission that she did not see plaintiff's vehicle).

B. Application

In this case, this Court credits the testimony of Mr. Camarda and Ms. Tisdale that Mr. Camarda's vehicle was completely stopped, with the left turn signal on, waiting for Ms. Tisdale to exit the Postal facility driveway when it was hit on the left side by plaintiff's vehicle as he was attempting to pass. The undisputed testimony demonstrates that given the size of the driveway at the Flatbush Post Office, only one vehicle could enter or exit at a time. Thus, it would make no sense for Mr. Camarda to have started to make that left turn while Ms. Tisdale's vehicle was still in the driveway.

Moreover, although plaintiff denies that the Postal truck's turn signal or brake lights were

on, common sense dictates that the truck, had it been parked with its engine off, as plaintiff's testimony implies, would not have been able to make the left turn into plaintiff's vehicle as plaintiff claims. For that to happen, the truck would either have had to start its engines while plaintiff was behind it or the driver would have had to put his foot on the brakes and then the brake lights would have come on. The more credible explanation, and the one testified to by both Mr. Camarda and Ms. Tisdale, was that the truck was stopped with its brake lights and turn signal on, waiting to make the turn. Plaintiff, who conceded he was in a hurry and late for a meeting with his girlfriend, may not have noticed the lights; he conceded that he never saw Ms. Tisdale's truck coming down the driveway. He honked his horn impatiently, possibly in an effort to get the truck to move, and then when it did not move, he decided to cut around the truck to the left. While he may have checked for oncoming traffic, he nonetheless failed to see Ms. Tisdale until he was already around the side of Mr. Camarda's vehicle.

The Court concludes that based on all of the credible evidence, the plaintiff did not use due care in making sure that the road was clear before passing the Postal Service vehicle on its left and that it was plaintiff's negligence that was the proximate cause of the accident.

Accordingly, the Court finds in favor of defendant on liability and renders a judgment in favor of defendant, dismissing plaintiff's claims in their entirety.

**SO ORDERED.**

Dated: Brooklyn, New York
June 20, 2005

_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York